**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**                                  April 21, 2011

Louis A. Zayas
Law Office of Louis A. Zayas
6121 Kennedy Blvd.
2nd Floor
North Bergen, NJ 07047

David B. Beckett
Mets Schiro & McGovern, LLP
P.O. Box 668
Woodbridge, NJ 07095

Eric L. Harrison
Methfessel & Werbel, PC
3 Ethel Road
Suite 300
P.O. Box 3012
Edison, NJ 08818-3012

## LETTER OPINION

Re:   **Griffin v. Township of Clark, et al.**
      **Civil Action No. 09-4853 (JLL)**

Dear Parties:

This matter comes before the Court by way of Defendants' motion for summary judgment filed on February 22, 2011. The Court has considered the arguments in support of and in opposition to the present motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

The following facts are undisputed, except where noted. At all relevant times, Plaintiff has been employed as a police officer by the Township of Clark, a municipal corporation in the State of New Jersey. (Defs.' Stmt. of Undisputed Facts ("SOF") ¶ 1–2.) Defendant Denis E. Connell is the Chief of Police for the Township's police department. (SOF ¶ 4.)

On or about May 6, 2008, Plaintiff received notice from Captain Kevin White that he was the subject of an internal affairs investigation regarding suspicious activity on the Clark Police Benevolent Association ("PBA") credit card during the time period in which Plaintiff had served as President of the PBA. (Id. at ¶ 5–6.) While the parties dispute the official nature of the investigation, they agree that it was initiated by Chief Connell based on an inquiry made by Officer Eric Richer, Plaintiff's successor as PBA President. (Id. at ¶ 31, Pl.'s Counter-Stmt. of Material Facts at ¶ 31.) On September 29, 2008, Chief Connell wrote a letter to Officer Richter advising him of the outcome of the investigation. (SOF ¶ 56.) On September 30, 2008, Plaintiff received a letter from Chief Connell stating that the investigation was concluded and that the allegations against Plaintiff were "sustained"; however, the letter further indicated that because the statute of limitations had expired, no criminal charges would be filed, and the matter would be referred to the PBA. (Id. at ¶ 11–12.)

On November 3, 2008, Plaintiff served a notice of claim on Chief Connell and the Township alleging defamation and other common law torts. (Id. at ¶ 18.) Thereafter, Plaintiff alleges that Defendants engaged in various retaliatory acts. These acts include statements by made Chief Connell to other officers that Plaintiff "should be disciplined," that the Chief intended to "embarrass Plaintiff in the newspaper" if Plaintiff proceeded with his lawsuit, that Plaintiff was going to "end up like his brother," who had resigned from the New Jersey State Police, and that Chief Connell "vowed to get Plaintiff no matter how long it took." (Id. at ¶ 74(a)–(c), (e).) Plaintiff also alleges that Captain White denied him the opportunity to train a new officer, explaining to a third party that Plaintiff was "nothing but a bad influence and a do-nothing." (Id. at ¶ 74(d).) Plaintiff alleges that Chief Connell ignored Plaintiff while greeting other officers and on one occasion blocked a doorway that Plaintiff was entering. (Id. at ¶ 74(g)–(h).) Chief Connell also allegedly questioned what "would have become" of Plaintiff had he "received an education," in front of a group of Plaintiff's superiors, including the Mayor. (Id. at ¶ 74(k).) Plaintiff alleges that he was denied overtime on multiple occasions, including one in which Chief Connell revoked a grant of overtime that had already been awarded by a Sergeant to whom Plaintiff reported. (Id. at ¶ 74(i)–(j).) Chief Connell, however, later reversed that decision. (Id. at ¶ 74(j).) Plaintiff further alleges that in or about June 2009, Plaintiff had requested to work two outside security jobs, but Chief Connell denied both requests. (Id. at ¶ 74(l).) Plaintiff finally alleges that on or about July 2010, after this action was filed, Captain White asked a Sergeant to write Plaintiff up for some unspecified issue related to a report Plaintiff had filed, but the Sergeant refused to do so. (Id. at ¶ 74(m).)

On November 22, 2009, Plaintiff filed the instant action. On January 22, 2010, this Court dismissed various of Plaintiff's claims, and Defendants now move for summary judgment on the remaining claims, which are based on First Amendment retaliation in violation of 42 U.S.C. § 1983 and defamation under New Jersey state law.

## **LEGAL STANDARD**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## **DISCUSSION**

**1.    Section 1983 Claim**

Plaintiff's Complaint brings First Amendment retaliation claims against Chief Connell and the Township[1] under 42 U.S.C. § 1983. To establish a violation of § 1983, Plaintiff must prove (1) that he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed under color of state law. See, e.g., Am. Mfrs. Mut. Ins. Co, v. Sullivan, 526 U.S. 40, 49–50 (1999); D'Aurizio v. Palisades Park, 963 F. Supp. 378, 383 (D.N.J. 1997). Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights. See, e.g., Graham v. Connor, 490 U.S. 386, 393–94 (1989). Defendants do not dispute that the alleged deprivation here was committed under color of state law.

Plaintiff alleges that Chief Connell took retaliatory action against him as a result of his exercise of rights protected under the First Amendment's Petition Clause. See U.S. Const. Amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Defendants do not dispute that Plaintiff's filing a notice of claim is protected conduct under the Petition Clause. (Defs.' Mot. Br. at 6; see Anderson v.

---

[1]Defendants' motion assumes arguendo that any § 1983 violation by Chief Connell would be imputed to the Township are based on "policy-maker" liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). (Defs.' Mot. Br. at 6 n.1.)

3

Davilla, 125 F.3d 148, 162 (3d Cir. 1997)).

A public employer "adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quoting Suarez Corp. Industries v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)). "On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." Id. As to causation, a "plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action"; however "the public employer can [still] rebut the claim by demonstrating it would have reached the same decision . . . even in the absence of the protected conduct." Id. at 414 (alteration in original, citation omitted). Two factors relevant to the causation analysis are timing and evidence of ongoing antagonism. Abramson v. William Patterson Coll., 260 F.3d 265, 288 (3d Cir. 2001); see Brennan, 350 F.3d at 420 ("The causation required to establish a claim under § 1983 is identical to that required under Title VII").

Plaintiff's claims of retaliatory action by Chief Connell are based on two types of conduct: statements allegedly made to harass or embarrass Plaintiff and denials of overtime and outside work opportunities. Defendant contends that many of the alleged harassing or embarrassing statements were made to third parties and thus constitute inadmissible hearsay. Assuming without deciding that such statements would be inadmissible, the Court finds that Plaintiff has nonetheless put forth sufficient evidence from which a reasonable jury could conclude that Chief Connell engaged in adverse actions "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." While criticism and verbal reprimands are typically insufficient to prove unlawful retaliation, adverse decisions regarding employment status and advancement are sufficient, and Plaintiff has provided numerous pieces of testimonial evidence that Chief Connell denied Plaintiff's requested overtime and outside work opportunities. (See Def.'s Mot. Br., Ex. M, Dep. of Glenn Griffin ("Griffin Dep."), 78:24–81:25, 102:2–104:3; Ex. N, ¶ 23.) As various facts underlying these allegations remain in dispute, including whether one such request was even made, see, e.g., SOF ¶ 74(i), summary judgment on this issue is inappropriate.

Causation likewise presents issues of material fact, as the parties dispute the degree to which Plaintiff's undisputedly protected speech motivated the adverse actions allegedly taken by Chief Connell. While the parties' submissions have not provided clear evidence of when a number of the alleged retaliations took place, the Court's own investigation of the record has revealed evidence that the conversations with Lt. Adamonis occurred on or near the date on which Chief Connell was served with the notice of claim.[2] (Griffin Dep. 72:1–73:17.) Plaintiff has stated that he requested

---

[2]Plaintiff has also stated that Captain White's denial of his opportunity to train a rookie officer occurred the same day as Plaintiff's conversations with Lt. Adamonis. (Griffin Dep. at 75:14–15). However, Plaintiff has produced no facts to link Captain White's alleged statement to

4

to work outside jobs in or about June 2009, approximately eight months after the notice of claim was filed, id. at 102:2–104:3, and Plaintiff has further stated that the Chief's comment regarding Plaintiff's education occurred over six months after the notice of claim was filed, id. at 78:8–18. Plaintiff, however, appears to have provided little evidence from which a jury could approximate the dates on which the alleged denials of his overtime requests took place, except to infer that they occurred within the roughly one year period between Plaintiff's service of the notice of claim and his filing this action.

While, as Defendant argues, Plaintiff's statements regarding his conversations with Lt. Adamonis may not be admissible for the truth of the matter they assert, see Fed. R. Evid. 801(c), they would be admissible as non-hearsay evidence that such statements were in fact made. These statements, viewed along with the Chief's public criticism of Plaintiff's education and alleged intimidating behavior, tend to show that an acrimonious relationship existed between Plaintiff and Chief Connell and would be sufficient to persuade a reasonable jury of an "ongoing antagonism" between the parties during the relevant time period. Thus, while the over six month gap between the filing of the notice of claim and the Chief's alleged denials of Plaintiff's work opportunities appears to be too remote to alone support a finding of causation, see, e.g., Williams v. Phila. Hous. Auth., 380 F.3d 751, 760 (3d Cir. 2004) (holding a two month delay to be too long to permit an inference of causation), the Court concludes that a showing of ongoing antagonism during the several month delay between the protected conduct and the adverse employment action could reasonably support a finding of causation in this case. As Defendants dispute that certain overtime and outside work requests ever took place, genuine issues of material fact remain. Summary judgment is therefore inappropriate on this issue and consequently on Plaintiff's § 1983 claim as a whole.[3]

## 2.   Defamation Claim

Under New Jersey law, a defamation claim has three elements: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1113 (N.J. 2009) (quoting DeAngelis v. Hill, 847 A.2d 1261, 1267–68 (N.J. 2004)). When the plaintiff is a public official, however, the plaintiff must establish by clear and convincing evidence that the defendant acted with "actual malice," that is, knowingly or with reckless disregard for the truth published false statements. Id.

---

Chief Connell.  (See id. at 76:17–23.)  Plaintiff has therefore failed to meet his evidentiary burden with respect to this allegation.

[3] As Defendants' motion assumes arguendo that any § 1983 violation by Chief Connell would be imputed to the Township, and instead bases its arguments for summary judgment as to the Township on the underlying liability of Chief Connell, see Defs.' Mot. Br. at 6 n.1, summary judgment is likewise inappropriate on Plaintiff's Monell claim.

Defendants' principal argument is that any publication of the September 30, 2008 letter to third parties was qualifiedly privileged and therefore non-actionable. The New Jersey Supreme Court has stated that a communication that is "made bona fide upon any subject-matter in which the party communicating has an interest or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty." Williams v. Bell Tel. Labs., 623 A.2d 234, 240 (N.J. 1993) (quotation omitted, emphasis in original). However, the privilege is abused if "(1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published." Id.

Defendants contend that Chief Connell discussed the allegations contained in the September 29 and September 30 letters with only Officer Richter, Captain White, and Assistant Prosecutor William Kolano, the internal affairs officer allegedly assigned to the investigation. Defendant argues that these communications were privileged, as each party was involved in the internal affairs investigation, creating a duty for Chief Connell to communicate the results of the investigation to each. Plaintiff responds that disclosure to Officer Richter was not privileged, because the letter was not disclosed pursuant to a "legitimate internal affairs investigation." (Pl.'s Opp'n Br. at 13.) Plaintiff first points to Officer Richter's testimony that he did not file a "complaint," but had rather asked Chief Connell how his suspicions regarding the alleged misuse of the PBA credit card should be addressed. (Id.) Plaintiff further points to the testimony of Sergeant Richard Stamler, an employee of the Union County Prosecutor's Office, who stated that no internal affairs investigation was ever conducted by that office. (Pl.'s Opp'n Br., Ex. 3, Dep. of Richard Stamler, 7:11–15.) Defendant disputes these assertions but offers no authority from which the Court could conclude that Chief Connell would have a duty to communicate the results to Officer Richter, or other persons, in the absence of an official investigation. The Court thus concludes that Plaintiff has produced sufficient evidence from which a reasonable jury could conclude that the allegations contained in the September 29 and September 30 letters were published in an unprivileged manner to third parties, and that genuine issues of material fact preclude summary judgment on this issue.

As to the other elements of Plaintiff's defamation claim, Defendants do not appear to dispute that the statements contained in either letter have a legally defamatory meaning, instead arguing that the statements were truthful and that Chief Connell did not act with actual malice. The truth of statements contained in the letter is clearly in dispute, as the parties disagree on whether an internal affairs investigation was even conducted, and, as already discussed, Plaintiff has produced competent evidence to support his contentions regarding falsity. Plaintiff has likewise met his evidentiary burden regarding Chief Connell's intent in publishing the alleged false and defamatory statements, as Chief Connell's knowledge of their falsity could reasonably be inferred from the testimony of Sergeant Stamler regarding the existence, or non-existence, of the internal affairs investigation. The Court thus concludes that genuine issues of material fact preclude summary judgment on these issues, and on Plaintiff's defamation claim as a whole.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is denied. An appropriate Order accompanies this Letter Opinion.

      /s/ Jose L. Linares
Jose L. Linares
United States District Judge